UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

ANTONIO ALIBERTI, RICHARD BLANC, HEATHER
BURKITT, SUSAN CHODKOWSKI, SUSAN FERGUSON,
MICHAEL GERRATO, DESIREE JASINSKI, FRANCES
LESSER, ROSANNA LAURO, JOSEPH PROCOPIO, NEIL
SANTORELLI, MATTHEW SARTER, FRANK
SCIREMAMMANO, and JAMES WRIGHT,

<table>
<tr><td>Plaintiffs,</td><td>**COMPLAINT**</td></tr>
</table>

-against-

NASSAU COUNTY,

Defendant.

---

Plaintiffs, by their attorneys, STEVEN A. CRAIN and DAREN J. RYLEWICZ (Eric E.

Wilke and Aaron E. Kaplan, of counsel), for their complaint respectfully allege as follows:

### PARTIES

1.  Plaintiff Antonio Aliberti (hereinafter referred to as "Aliberti") is an employee of the named
    Defendant, employed as a Kitchen Supervisor at the Nassau County Jail.  Plaintiff Aliberti
    is a resident of Nassau County.  At all times relevant, Plaintiff was a member of the Civil
    Service Employees Association, Inc., Local 1000 AFSCME, AFL-CIO (hereinafter
    "CSEA"), the certified bargaining representative for certain Nassau County employees.

2.  Plaintiff Richard Blanc (hereinafter referred to as "Blanc") is an employee of the named
    Defendant, employed as a Police Communication Operator at the Nassau County
    Corrections Bureau.  Plaintiff Blanc is a resident of Nassau County.  At all times relevant,
    Plaintiff was a member of CSEA, the certified bargaining representative for certain Nassau
    County employees.

3.      Plaintiff Heather Burkitt (hereinafter referred to as "Burkitt") is an employee of the named Defendant, employed as a Police Communications Operator at the Nassau County Communications Bureau.  Plaintiff Burkitt is a resident of Nassau County.  At all times relevant, Plaintiff was a member of CSEA, the certified bargaining representative for certain Nassau County employees.

4.      Plaintiff Susan Chodkowski (hereinafter referred to as "Chodkowski") is an employee of the named Defendant, employed as a Police Communications Operator Supervisor at the Nassau County Communications Bureau.  Plaintiff Chodkowski is a resident of Nassau County.  At all times relevant, Plaintiff was a member of CSEA, the certified bargaining representative for certain Nassau County employees.

5.      Plaintiff Susan Ferguson (hereinafter referred to as "Ferguson") is an employee of the named Defendant, employed as a Police Communications Operator Supervisor at the Nassau County Jail.  Plaintiff Ferguson is a resident of Suffolk County.  At all times relevant, Plaintiff was a member of CSEA, the certified bargaining representative for certain Nassau County employees.

6.      Plaintiff Michael Gerrato (hereinafter referred to as "Gerrato") is an employee of the named Defendant, employed as a Kitchen Supervisor at the Nassau County Jail.  Plaintiff Gerrato is a resident of Nassau County.  At all times relevant, Plaintiff was a member of CSEA, the certified bargaining representative for certain Nassau County employees.

7.      Plaintiff Desiree Jasinski (hereinafter referred to as "Jasinski") is an employee of the named Defendant, employed as a Cook I at the Nassau County Jail.  Plaintiff Jasinski is a resident of Nassau County.  At all times relevant, Plaintiff was a member of CSEA, the certified bargaining representative for certain Nassau County employees.

8.     Plaintiff Frances Lesser (hereinafter referred to as "Lesser") is an employee of the named Defendant, employed as a Police Communications Operator Supervisor at the Nassau County Communications Bureau.  Plaintiff Lesser is a resident of Suffolk County.  At all times relevant, Plaintiff was a member of CSEA, the certified bargaining representative for certain Nassau County employees.

9.     Plaintiff Rosanna Lauro (hereinafter referred to as "Lauro") is an employee of the named Defendant, employed as a Police Communications Operator at the Nassau County Communications Bureau.  Plaintiff Lauro is a resident of Nassau County.  At all times relevant, Plaintiff was a member of CSEA, the certified bargaining representative for certain Nassau County employees.

10.    Plaintiff Joseph Procopio (hereinafter referred to as "Procopio") is an employee of the named Defendant, employed as a Cook I at the Nassau County Jail.  Plaintiff Procopio is a resident of Nassau County.  At all times relevant, Plaintiff was a member of CSEA, the certified bargaining representative for certain Nassau County employees.

11.    Plaintiff Scott Reisman (hereinafter referred to as "Reisman") is an employee of the named Defendant, employed as a Cook I at the Nassau County Jail.  Plaintiff Reisman is a resident of Suffolk County.  At all times relevant, Plaintiff was a member of CSEA, the certified bargaining representative for certain Nassau County employees.

12.    Plaintiff Neil Santorelli (hereinafter referred to as "Santorelli") is an employee of the named Defendant, employed as a Sewage Treatment Plant Operator at the Nassau County Department of Public Workds.  Plaintiff Santorelli is a resident of Suffolk County.  At all times relevant, Plaintiff was a member of CSEA, the certified bargaining representative for certain Nassau County employees.

13.     Plaintiff Matthew Sarter (hereinafter referred to as "Sarter") is an employee of the named Defendant, employed as a Police Communications Operator at the Nassau County Communications Bureau. Plaintiff Sarter is a resident of Nassau County. At all times relevant, Plaintiff was a member of CSEA, the certified bargaining representative for certain Nassau County employees.

14.     Plaintiff Frank Sciremammano (hereinafter referred to as "Sciremammano") is an employee of the named Defendant, employed as a Cook II the Nassau County Jail. Plaintiff Sciremammano is a resident of Nassau County. At all times relevant, Plaintiff was a member of CSEA, the certified bargaining representative for certain Nassau County employees.

15.     Plaintiff James Wright (hereinafter referred to as "Wright") is an employee of the named Defendant, employed as a Cook II at the Nassau County Jail. Plaintiff Wright is a resident of Suffolk County. At all times relevant, Plaintiff was a member of CSEA, the certified bargaining representative for certain Nassau County employees.

16.     The claims of the individually named Plaintiffs under the Fair Labor Standards Act of 1938, as amended (29 U.S.C. § 201, *et seq.*), referred to as the FLSA, are similar to and typical of the claims of additional persons who are employees of Nassau County and hold positions within the CSEA-represented bargaining unit and are either currently employed by Defendant or were employed by Defendant within the last three (3) years and who are or were at one time members of the CSEA-represented bargaining unit (hereinafter referred to as "CSEA members").

17.   At all material times herein, Defendant County and the CSEA are parties to a collective bargaining agreement (hereinafter referred to as "CBA") and an Interest Arbitration Award dated December 11, 2008 (hereinafter referred to as "Arbitration Award").

18.   Plaintiffs and other CSEA-represented bargaining unit members are similarly situated since they are all subject to the provisions contained in the CBA between CSEA and Defendant and the December 11, 2008 Arbitration Award.  Plaintiffs and similarly situated CSEA-represented bargaining unit members have had overtime calculated pursuant to Section 28-3 of the collective bargaining agreement.  Section 28-3, prohibits additional differential compensation, such as longevity, shift differential, or hazardous duty pay to be considered when calculating overtime compensation and the overtime rate of pay.

19.   Plaintiffs bring this action for a declaratory judgment under 28 U.S.C. §§ 2201 and 2202 and for unpaid overtime compensation, liquidated damages, attorney fees and costs under the provisions of Section 16(b) of the FLSA (29 U.S.C. § 216(b)).

20.   Defendant COUNTY OF NASSAU (hereinafter "County") is a political subdivision of the State of New York, subject to the Constitution and laws of the State of New York, and the County Charter.  Defendant County is a "public agency" as defined in 29 USC § 203(x) and an "employer," and is the employer of CSEA-represented employees including Plaintiffs, as defined in 29 USC § 203(d).

## II. Jurisdiction and Venue

21.   Jurisdiction of this action is conferred on this Court by 29 U.S.C. § 216(b), 28 U.S.C. § 1331 and 28 U.S.C. § 1337.

22.   This Court has supplemental or pendant jurisdiction over Plaintiffs' New York State Law claims pursuant to 28 U.S.C. § 1367 and the principles of pendant jurisdiction.

23.     Venue lies within this district pursuant to 28 U.S.C. § 1391.

### III.  Causes of Action

24.     At all times material herein, Plaintiffs have been entitled to the rights, protections and benefits provided under the FLSA.

25.     The FLSA requires that employees be paid overtime compensation at a rate not less than one and one-half their regular rates of pay for all hours worked in excess of forty (40) hours in a workweek (29 U.S.C. § 201(a)(1)).

### AS AND FOR A FIRST CAUSE OF ACTION

### Longevity Pay

26.     Plaintiffs repeat and re-allege the allegations set forth in Paragraphs 1 through 25 as if each were set forth in full herein.

27.     Defendant County has improperly calculated overtime compensation for Plaintiffs and other employees similarly situated by not including longevity payments made to Plaintiffs and other employees similarly situated in calculating Plaintiffs' and other similarly situated employees' regular rate of pay, as required by the FLSA.

28.     Under the FLSA and the applicable regulations of the U.S. Department of Labor, incentive-type bonuses given pursuant to an agreement or understanding as an incentive to remain with an employer are regarded as part of the regular rate of pay and must be included in the regular rate of pay.  See, 29 C.F.R. § 778.211.

29.     Section 25-8 of the CBA, provides for longevity payments a CSEA member who has worked as an employee for the County for a certain number of years shall be paid an amount in addition to their regular pay.  Such payments made pursuant to Section 25-8, are made in a lump sum payment on April 1st of each respective year.

30.     Pursuant to the Arbitration Award the longevity payment schedule was recalculated and the current schedule has been in effect since 2011.

31.     Pursuant to the Arbitration Award, employees that have worked for the County for six (6) years shall receive FOUR HUNDRED DOLLARS ($400.00) in addition to their regular pay.

32.     Pursuant to the Arbitration Award, employees that have worked for the County for seven (7) years shall receive FOUR HUNDRED FIFTY DOLLARS ($450.00) in addition to their regular pay.

33.     Pursuant to the Arbitration Award, employees that have worked for the County for eight (8) years shall receive FIVE HUNDRED DOLLARS ($500.00) in addition to their regular pay.

34.     Pursuant to the Arbitration Award, employees that have worked for the County for nine (9) years shall receive FIVE HUNDRED FIFTY DOLLARS ($550.00) in addition to their regular pay.

35.     Pursuant to the Arbitration Award, employees that have worked for the County for ten (10) years shall receive SIX HUNDRED ($600.00) in addition to their regular pay.

36.     Pursuant to the Arbitration Award, employees that have worked for the County for eleven (11) years shall receive SIX HUNDRED FIFTY DOLLARS ($650.00) in addition to their regular pay.

37.     Pursuant to the Arbitration Award, employees that have worked for the County for twelve (12) years shall receive SEVEN HUNDRED TWENTY FIVE DOLLARS ($725.00) in addition to their regular pay.

38.     Pursuant to the Arbitration Award, employees that have worked for the County for thirteen (13) years shall receive ONE THOUSAND DOLLARS ($1,000.00) in addition to their regular pay.

39.     Pursuant to the Arbitration Award, employees that have worked for the County for fourteen (14) years shall receive ONE THOUSAND THREE HUNDRED TWENTY FIVE DOLLARS ($1,325.00) in addition to their regular pay.

40.     Pursuant to the Arbitration Award, employees that have worked for the County for fifteen (15) years shall receive ONE THOUSAND FIVE HUNDRED DOLLARS ($1,500.00) in addition to their regular pay.

41.     Pursuant to the Arbitration Award, employees that have worked for the County for sixteen (16) years shall receive ONE THOUSAND SEVEN HUNDRED DOLLARS ($1,700.00) in addition to their regular pay.

42.     Pursuant to the Arbitration Award, employees that have worked for the County for seventeen (17) years shall receive ONE THOUSAND NINE HUNDRED DOLLARS ($1,900.00) in addition to their regular pay.

43.     Pursuant to the Arbitration Award, employees that have worked for the County for eighteen (18) years shall receive TWO THOUSAND TWO HUNDRED DOLLARS ($2,200.00) in addition to their regular pay.

44.     Pursuant to the Arbitration Award, employees that have worked for the County for nineteen (19) years shall receive TWO THOUSAND FOUR HUNDRED DOLLARS ($2,400.00) in addition to their regular pay.

45.     Pursuant to the Arbitration Award, employees that have worked for the County for twenty (20) years shall receive THREE THOUSAND TWO HUNDRED DOLLARS ($3,200.00) in addition to their regular pay.

46.     Pursuant to the Arbitration Award, employees that have worked for the County for twenty-one (21) years shall receive THREE THOUSAND THREE HUNDRED DOLLARS ($3,300.00) in addition to their regular pay.

47.     Pursuant to the Arbitration Award, employees that have worked for the County for twenty-two (22) years shall receive THREE THOUSAND FOUR HUNDRED DOLLARS ($3,400.00) in addition to their regular pay.

48.     Pursuant to the Arbitration Award, employees that have worked for the County for twenty-three (23) years shall receive THREE THOUSAND SIX HUNDRED FIFTY DOLLARS ($3,650.00) in addition to their regular pay.

49.     Pursuant to the Arbitration Award, employees that have worked for the County for twenty-four (24) years shall receive THREE THOUSAND NINE HUNDRED DOLLARS ($3,900.00) in addition to their regular pay.

50.     Pursuant to the Arbitration Award, employees that have worked for the County for twenty-five (25) years shall receive FOUR THOUSAND DOLLARS ($4,000.00) in addition to their regular pay.

51.     Pursuant to the Arbitration Award, employees that have worked for the County for twenty-six (26) years shall receive FOUR THOUSAND TWO HUNDRED DOLLARS ($4,200.00) in addition to their regular pay.

52.    Pursuant to the Arbitration Award, employees that have worked for the County for twenty-seven (27) years shall receive FOUR THOUSAND FOUR HUNDRED DOLLARS ($4,400.00) in addition to their regular pay.

53.    Pursuant to the Arbitration Award, employees that have worked for the County for twenty-eight (28) years shall receive FOUR THOUSAND SIX HUNDRED DOLLARS ($4,600.00) in addition to their regular pay.

54.    Pursuant to the Arbitration Award, employees that have worked for the County for twenty-nine (29) years shall receive FOUR THOUSAND EIGHT HUNDRED DOLLARS ($4,800.00) in addition to their regular pay.

55.    Pursuant to the Arbitration Award, employees that have worked for the County for thirty (30) years shall receive FIVE THOUSAND DOLLARS ($5,000.00) in addition to their regular pay.

56.    Pursuant to the Arbitration Award, for each year after thirty (30) years of service, employees shall receive FIVE THOUSAND DOLLARS ($5,000.00) plus an additional THREE HUNDRED DOLLARS ($300.00) per year in addition to their regular pay.

57.    Longevity payments paid to Plaintiffs and other employees similarly situated falls under the definition of "regular rate of pay" and does not fit any of the exceptions listed in 29 USC § 207.

58.    Plaintiff Aliberti received longevity payments in the amount of $1,475.00 in year 2012; $1,475.00 in year 2013; and $1,475.00 in year 2014.

59.    Upon information and belief, in 2012, Plaintiff Aliberti received approximately $9,606.67 in overtime payments for 234 hours worked in excess of 40 hours per week.  The

calculation for Aliberti's hourly overtime rate of pay did not include the $1,475.00 payments he received for longevity.

60.   Upon information and belief, in 2013, Plaintiff Aliberti received approximately $10,363.13 in overtime payments for 252.50 hours worked in excess of 40 hours per week.  The calculation for Aliberti's hourly overtime rate of pay did not include the $1,475.00 payments he received for longevity.

61.   Upon information and belief, in 2014, Plaintiff Aliberti received approximately $25,133.00 in overtime payments for 612.00 hours worked in excess of 40 hours per week.  The calculation for Aliberti's hourly overtime rate of pay did not include the $1,475.00 payments he received for longevity.

62.   Plaintiff Blanc received longevity payments in the amount of $2,323.00 in year 2012; $2,323.00 in year 2013; and $2,323.00 in year 2014.

63.   Upon information and belief, in 2012, Plaintiff Blanc received approximately $23,195.13 in overtime payments for 427 hours worked in excess of 40 hours per week.  The calculation for Blanc's hourly overtime rate of pay did not include the $2,323.00 payments he received for longevity.

64.   Upon information and belief, in 2013, Plaintiff Blanc received approximately $37,522.74 in overtime payments for 691 hours worked in excess of 40 hours per week.  The calculation for Blanc's hourly overtime rate of pay did not include the $2,323.00 payments he received for longevity.

65.   Upon information and belief, in 2014, Plaintiff Blanc received approximately $37,975.76 in overtime payments for 681 hours worked in excess of 40 hours per week.  The calculation

for Blanc's hourly overtime rate of pay did not include the $2,323.00 payments he received for longevity.

66.   Plaintiff Burkitt received longevity payments in the amount of $600.00 in year 2012;  and $600.00 in year 2013.

67.   Upon information and belief, in 2012, Plaintiff Burkitt received approximately $1,574.76 in overtime payments for 29 hours worked in excess of 40 hours per week.  The calculation for Burkitt's hourly overtime rate of pay did not include the $600.00 payments she received for longevity.

68.   Upon information and belief, in 2013, Plaintiff Burkitt received approximately $1,303.25 in overtime payments for 24 hours worked in excess of 40 hours per week.  The calculation for Burkitt's hourly overtime rate of pay did not include the $600.00 payments she received for longevity.

69.   Plaintiff Chodkowski received longevity payments in the amount of $1,475.00 in year 2012; $1,475.00 in year 2013; and $1,475.00 in year 2014.

70.   Upon information and belief, in 2012, Plaintiff Chodkowski received approximately $11,462.03 in overtime payments for 180 hours worked in excess of 40 hours per week. The calculation for Chodkowski's hourly overtime rate of pay did not include the $1,475.00 payments she received for longevity.

71.   Upon information and belief, in 2013, Plaintiff Chodkowski received approximately $28,622.88 in overtime payments for 487.50 hours worked in excess of 40 hours per week. The calculation for Chodkowski's hourly overtime rate of pay did not include the $1,475.00 payments she received for longevity.

72.    Upon information and belief, in 2014, Plaintiff Chodkowski received approximately $28,622.88 in overtime payments for 437.73 hours worked in excess of 40 hours per week. The calculation for Chodkowski's hourly overtime rate of pay did not include the $1,475.00 payments she received for longevity.

73.    Plaintiff Ferguson received longevity payments in the amount of $1,285.00 in year 2012; $1,285.00 in year 2013; and $1,285.00 in year 2014.

74.    Upon information and belief, in 2012, Plaintiff Ferguson received approximately $7,547.58 in overtime payments for 136 hours worked in excess of 40 hours per week. The calculation for Ferguson's hourly overtime rate of pay did not include the $1,285.00 payments she received for longevity.

75.    Upon information and belief, in 2013, Plaintiff Ferguson received approximately $7,974.46 in overtime payments for 127.75 hours worked in excess of 40 hours per week. The calculation for Ferguson's hourly overtime rate of pay did not include the $1,285.00 payments she received for longevity.

76.    Upon information and belief, in 2014, Plaintiff Ferguson received approximately $15,972.59 in overtime payments for 244.25 hours worked in excess of 40 hours per week. The calculation for Ferguson's hourly overtime rate of pay did not include the $1,285.00 payments she received for longevity.

77.    Plaintiff Gerrato received longevity payments in the amount of $1,475.00 in year 2012; $1,475.00 in year 2013; and $1,475.00 in year 2014.

78.    Upon information and belief, in 2012, Plaintiff Gerrato received approximately $24,149.55 in overtime payments for 459.50 hours worked in excess of 40 hours per week. The

calculation for Gerrato's hourly overtime rate of pay did not include the $1,475.00 payments he received for longevity.

79.    Upon information and belief, in 2013, Plaintiff Gerrato received approximately $15,741.82 in overtime payments for 257 hours worked in excess of 40 hours per week.  The calculation for Gerrato's hourly overtime rate of pay did not include the $1,475.00 payments he received for longevity.

80.    Upon information and belief, in 2014, Plaintiff Gerrato received approximately $33,425.74 in overtime payments for 532.50 hours worked in excess of 40 hours per week.  The calculation for Gerrato's hourly overtime rate of pay did not include the $1,475.00 payments he received for longevity.

81.    Plaintiff Lesser received longevity payments in the amount of $1,855.00 in year 2012; $1,855.00 in year 2013; and $1,855.00 in year 2014.

82.    Upon information and belief, in 2012, Plaintiff Lesser received approximately $18,505.75 in overtime payments for 290.50 hours worked in excess of 40 hours per week.  The calculation for Lesser's hourly overtime rate of pay did not include the $1,855.00 payments he received for longevity.

83.    Upon information and belief, in 2013, Plaintiff Lesser received approximately $10,089.41 in overtime payments for 158.50 hours worked in excess of 40 hours per week.  The calculation for Lesser's hourly overtime rate of pay did not include the $1,855.00 payments he received for longevity.

84.    Upon information and belief, in 2014, Plaintiff Lesser received approximately $12,108.16 in overtime payments for 185.00 hours worked in excess of 40 hours per week.  The

calculation for Lesser's hourly overtime rate of pay did not include the $1,855.00 payments he received for longevity.

85.    Plaintiff Lauro received longevity payments in the amount of $481.00 in year 2012; $481.00 in year 2013; and $481.00 in year 2014.

86.    Upon information and belief, in 2012, Plaintiff Lauro received approximately $1,112.83 in overtime payments for 22.50 hours worked in excess of 40 hours per week. The calculation for Lauro's hourly overtime rate of pay did not include the $481.00 payments she received for longevity.

87.    Upon information and belief, in 2013, Plaintiff Lauro received approximately $12,958.25 in overtime payments for 262.00 hours worked in excess of 40 hours per week. The calculation for Lauro's hourly overtime rate of pay did not include the $481.00 payments she received for longevity.

88.    Upon information and belief, in 2014, Plaintiff Lauro received approximately $4,934.79 in overtime payments for 88.50 hours worked in excess of 40 hours per week. The calculation for Lauro's hourly overtime rate of pay did not include the $481.00 payments she received for longevity.

89.    Plaintiff Procopio received longevity payments in the amount of $525.00 in year 2012; $525.00 in year 2013; and $525.00 in year 2014.

90.    Upon information and belief, in 2012, Plaintiff Procopio received approximately $5,956.58 in overtime payments for 135.50 hours worked in excess of 40 hours per week. The calculation for Procopio's hourly overtime rate of pay did not include the $525.00 payments he received for longevity.

91.    Upon information and belief, in 2013, Plaintiff Procopio received approximately $13,209.98 in overtime payments for 300.50 hours worked in excess of 40 hours per week. The calculation for Procopio's hourly overtime rate of pay did not include the $525.00 payments he received for longevity.

92.    Upon information and belief, in 2014, Plaintiff Procopio received approximately $23,643.40 in overtime payments for 497.50 hours worked in excess of 40 hours per week. The calculation for Procopio's hourly overtime rate of pay did not include the $525.00 payments he received for longevity.

93.    Plaintiff Santorelli received longevity payments in the amount of $3,243.00 in year 2012; $3,243.00 in year 2013; and $3,243.00 in year 2014.

94.    Upon information and belief, in 2012, Plaintiff Santorelli received approximately $4,402.15 in overtime payments for 107.50 hours worked in excess of 40 hours per week. The calculation for Santorelli's hourly overtime rate of pay did not include the $3,243.00 payments he received for longevity.

95.    Upon information and belief, in 2013, Plaintiff Santorelli received approximately $10,366.71 in overtime payments for 253 hours worked in excess of 40 hours per week. The calculation for Santorelli's hourly overtime rate of pay did not include the $3,243.00 payments he received for longevity.

96.    Upon information and belief, in 2014, Plaintiff Santorelli received approximately $5,648.71 in overtime payments for 134.30 hours worked in excess of 40 hours per week. The calculation for Santorelli's hourly overtime rate of pay did not include the $3,243.00 payments he received for longevity.

97.    Plaintiff Sarter received longevity payments in the amount of $1,475.00 in year 2012; $1,475.00 in year 2013; and $1,475.00 in year 2014.

98.    Upon information and belief, in 2012, Plaintiff Sarter received approximately $24,658.61 in overtime payments for 454 hours worked in excess of 40 hours per week.  The calculation for Sarter's hourly overtime rate of pay did not include the $1,475.00 payments he received for longevity.

99.    Upon information and belief, in 2013, Plaintiff Sarter received approximately $14,688.72 in overtime payments for 270.50 hours worked in excess of 40 hours per week.  The calculation for Sarter's hourly overtime rate of pay did not include the $1,475.00 payments he received for longevity.

100.    Upon information and belief, in 2014, Plaintiff Sarter received approximately $12,145.02 in overtime payments for 218.00 hours worked in excess of 40 hours per week.  The calculation for Sarter's hourly overtime rate of pay did not include the $1,475.00 payments he received for longevity.

101.    Plaintiff Sciremammano received longevity payments in the amount of $525.00 in year 2012; $525.00 in year 2013; and $525.00 in year 2014.

102.    Upon information and belief, in 2012, Plaintiff Sciremammano received approximately $7,760.12 in overtime payments for 173.00 hours worked in excess of 40 hours per week.  The calculation for Sciremammano's hourly overtime rate of pay did not include the $525.00 payments he received for longevity.

103.    Upon information and belief, in 2013, Plaintiff Sciremammano received approximately $16,586.92 in overtime payments for 370.00 hours worked in excess of 40 hours per week.

The calculation for Sciremammano's hourly overtime rate of pay did not include the $525.00 payments he received for longevity.

104.   Upon information and belief, in 2014, Plaintiff Sciremammano received approximately $19,128.51 in overtime payments for 426.00 hours worked in excess of 40 hours per week. The calculation for Sciremammano's hourly overtime rate of pay did not include the $525.00 payments he received for longevity.

105.   Plaintiff Wright received longevity payments in the amount of $3,243.00 in year 2012; $3,243.00 in year 2013; and $3,243.00 in year 2014.

106.   Upon information and belief, in 2012, Plaintiff Wright received approximately $20,776.66 in overtime payments for 344.04 hours worked in excess of 40 hours per week. The calculation for Wright's hourly overtime rate of pay did not include the $3,243.00 payments he received for longevity.

107.   Upon information and belief, in 2013, Plaintiff Wright received approximately $32,216.14 in overtime payments for 533.50 hours worked in excess of 40 hours per week. The calculation for Wright's hourly overtime rate of pay did not include the $3,243.00 payments he received for longevity.

108.   Upon information and belief, in 2014, Plaintiff Wright received approximately $42,214.78 in overtime payments for 699.05 hours worked in excess of 40 hours per week. The calculation for Wright's hourly overtime rate of pay did not include the $3,243.00 payments he received for longevity.

109.   Plaintiffs' and other similarly situated employees' longevity payments are not and have not been included in the computation for which their overtime pay is determined, causing Plaintiffs and other employees similarly situated to be paid lesser amounts of overtime pay

than they were and are entitled to by law.  This practice is contrary to 29 USC § 207 and other applicable sections of the FLSA.

110.   Defendant had prior notice that longevity payments must be included in the regular rate of pay for the purpose of computing the overtime rate of pay under the FLSA.

111.   As a result of Defendant's violations of the FLSA and the applicable regulations of the U.S. Department of Labor, there has become due and owing to Plaintiffs and other employees similarly situated amounts of overtime pay under the FLSA.

### AS AND FOR A SECOND CAUSE OF ACTION

### Shift Differentials

112.   Plaintiffs repeat and re-allege the allegations set forth in Paragraphs 1 through 111 as if each were set forth in full herein.

113.   Defendant County has improperly calculated overtime compensation for Plaintiffs and other employees similarly situated by not including shift differential payments made to Plaintiffs and other employees similarly situated in calculating Plaintiffs' and other similarly situated employees' regular rate of pay, as required by the FLSA.

114.   Under the FLSA and the applicable regulations of the U.S. Department of Labor, contractual premium pay rates must be included in calculating the regular rate of pay.  See, 29 C.F.R. § 778.207.

115.   Pursuant to Section 26 of the CBA, CSEA members receive payments in addition to their regular pay if they work certain shifts.

116.   Pursuant to Section 26 of the CBA, shift differential is paid according to whether the member falls under Group 1 or Group 2.  Pursuant to the CBA, Group 2 "shall consist of all employees whose regular/permanent shift requires that they report to work between the

hours of 10:00 p.m. and 1:00 a.m.; Group 1 "shall consist of all employees not covered under Group 2."

117.    In 2012, the Group 1 shift differential rate was an additional $3.36 per hour added to members' hourly rate.  In 2012, the Group 2 shift differential rate was $3.71 per hour added to members' hourly rate.

118.    In 2013, the Group 1 shift differential rate was $3.36 per hour added to members' hourly rate.  In 2013, the Group 2 shift differential rate was $3.71 per hour added to members' hourly rate.

119.    In 2014, the Group 1 shift differential rate was $3.48 per hour added to members' hourly rate.  In 2014, the Group 2 shift differential rate was $3.84 per hour added to members' hourly rate.

120.    Shift differential pay paid to Plaintiffs falls under the definition of "regular rate of pay" and does not fit any of the exceptions listed in 29 U.S.C. § 207.

121.    For at least the last three (3) years, Plaintiffs and other similarly situated employees received shift differential payments during pay periods when they also received overtime payments for working in excess of forty (40) hours per week.  Such shift differential payments are not and have not been included in the computation for which their overtime pay is determined, causing Plaintiff and other employees similarly situated to be paid lesser amounts of overtime pay than they were and are entitled to by law.  This practice is contrary to 29 U.S.C. § 207 and other applicable sections of the FLSA.

122.    Defendant had prior notice that shift differential pay must be included in the regular rate of pay for the purpose of computing the overtime rate of pay under the FLSA.

123. In 2012, Plaintiff Aliberti received $26.88 for Shift Differential. In 2013, Plaintiff Aliberti received $26.00 in Shift Differential. In 2014, Plaintiff Aliberti received $103.66 in Shift Differential.

124. Upon information and belief, in 2012, Plaintiff Aliberti received approximately $9,606.67 in overtime payments for 234.00 hours worked in excess of 40 hours per week. The calculation for Aliberti's hourly overtime rate of pay did not include the $26.88 payments he received for Shift Differential.

125. Upon information and belief, in 2013, Plaintiff Aliberti received approximately $10,363.13 in overtime payments for 252.50 hours worked in excess of 40 hours per week. The calculation for Aliberti's hourly overtime rate of pay did not include the $26.88 payments he received for Shift Differential.

126. Upon information and belief, in 2014, Plaintiff Aliberti received approximately $25,133.00 in overtime payments for 612.00 hours worked in excess of 40 hours per week. The calculation for Aliberti's hourly overtime rate of pay did not include the $103.66 payments he received for Shift Differential.

127. In 2012, Plaintiff Blanc received $7,736.26 for Shift Differential. In 2013, Plaintiff Blanc received $8,894.34 in Shift Differential. In 2014, Plaintiff Blanc received $8,774.27 in Shift Differential.

128. Upon information and belief, in 2012, Plaintiff Blanc received approximately $23,195.13 in overtime payments for 427.00 hours worked in excess of 40 hours per week. The calculation for Blanc's hourly overtime rate of pay did not include the $7,736.26 payments he received for Shift Differential.

129. Upon information and belief, in 2013, Plaintiff Blanc received approximately $37,522.74 in overtime payments for 691.00 hours worked in excess of 40 hours per week. The calculation for Blanc's hourly overtime rate of pay did not include the $8,894.34 payments he received for Shift Differential.

130. Upon information and belief, in 2014, Plaintiff Blanc received approximately $37,975.76 in overtime payments for 681.00 hours worked in excess of 40 hours per week. The calculation for Blanc's hourly overtime rate of pay did not include the $8,774.27 payments he received for Shift Differential.

131. In 2012, Plaintiff Burkitt received $6,226.08 for Shift Differential. In 2013, Plaintiff Burkitt received $6,333.60 in Shift Differential. In 2014, Plaintiff Burkitt received $6,253.68 in Shift Differential.

132. Upon information and belief, in 2012, Plaintiff Burkitt received approximately $1,574.76 in overtime payments for 29.00 hours worked in excess of 40 hours per week. The calculation for Burkitt's hourly overtime rate of pay did not include the $6,226.08 payments she received for Shift Differential.

133. Upon information and belief, in 2013, Plaintiff Burkitt received approximately $1,303.25 in overtime payments for 24.00 hours worked in excess of 40 hours per week. The calculation for Burkitt's hourly overtime rate of pay did not include the $6,333.60 payments she received for Shift Differential.

134. In 2012, Plaintiff Chodkowski received $11,462.03 for Shift Differential. In 2013, Plaintiff Chodkowski received $7,936.04 in Shift Differential. In 2014, Plaintiff Chodkowski received $7,697.32 in Shift Differential.

135.    Upon information and belief, in 2012, Plaintiff Chodkowski received approximately $11,462.03 in overtime payments for 180.00 hours worked in excess of 40 hours per week. The calculation for Chodkowski's hourly overtime rate of pay did not include the $11,462.03 payments she received for Shift Differential.

136.    Upon information and belief, in 2013, Plaintiff Chodkowski received approximately $28,622.88 in overtime payments for 487.50 hours worked in excess of 40 hours per week. The calculation for Chodkowski's hourly overtime rate of pay did not include the $7,936.04 payments she received for Shift Differential.

137.    Upon information and belief, in 2014, Plaintiff Chodkowski received approximately $28,622.88 in overtime payments for 437.73 hours worked in excess of 40 hours per week. The calculation for Chodkowski's hourly overtime rate of pay did not include the $7,697.32 payments she received for Shift Differential.

138.    In 2012, Plaintiff Ferguson received $6,871.20 for Shift Differential.  In 2013, Plaintiff Ferguson received $6,420.96 in Shift Differential.  In 2014, Plaintiff Ferguson received $7,129.20 in Shift Differential.

139.    Upon information and belief, in 2012, Plaintiff Ferguson received approximately $7,547.58 in overtime payments for 136.00 hours worked in excess of 40 hours per week.  The calculation for Ferguson's hourly overtime rate of pay did not include the $6,871.20 payments he received for Shift Differential.

140.    Upon information and belief, in 2013, Plaintiff Ferguson received approximately $7,974.46 in overtime payments for 127.75 hours worked in excess of 40 hours per week.  The calculation for Ferguson's hourly overtime rate of pay did not include the $6,420.96 payments she received for Shift Differential.

141.    Upon information and belief, in 2014, Plaintiff Ferguson received approximately
$15,972.59 in overtime payments for 244.25 hours worked in excess of 40 hours per week.
The calculation for Ferguson's hourly overtime rate of pay did not include the $7,129.20
payments she received for Shift Differential.

142.    In 2012, Plaintiff Gerrato received $4,646.88 for Shift Differential.  In 2013, Plaintiff
Gerrato received $3,995.04 in Shift Differential.  In 2014, Plaintiff Gerrato received
$4,441.56 in Shift Differential.

143.    Upon information and belief, in 2012, Plaintiff Gerrato received approximately $24,149.55
in overtime payments for 459.50 hours worked in excess of 40 hours per week.  The
calculation for Gerrato's hourly overtime rate of pay did not include the $4,646.88
payments he received for Shift Differential.

144.    Upon information and belief, in 2013, Plaintiff Gerrato received approximately $15,741.82
in overtime payments for 257.00 hours worked in excess of 40 hours per week.  The
calculation for Gerrato's hourly overtime rate of pay did not include the $3,995.04
payments he received for Shift Differential.

145.    Upon information and belief, in 2014, Plaintiff Gerrato received approximately $33,425.74
in overtime payments for 532.50 hours worked in excess of 40 hours per week.  The
calculation for Gerrato's hourly overtime rate of pay did not include the $4,441.56
payments he received for Shift Differential.

146.    In 2012, Plaintiff Jasinski received $6,985.44 for Shift Differential.  In 2013, Plaintiff
Jasinski received $6,884.64 in Shift Differential.  In 2014, Plaintiff Jasinski received
$7,328.40 in Shift Differential.

147.   Upon information and belief, in 2012, Plaintiff Jasinski received approximately $5,352.66 in overtime payments for 181.50 hours worked in excess of 40 hours per week.  The calculation for Jasinski's hourly overtime rate of pay did not include the $6,985.44 payments she received for Shift Differential.

148.   Upon information and belief, in 2013, Plaintiff Jasinski received approximately $4,084.53 in overtime payments for 138.50 hours worked in excess of 40 hours per week.  The calculation for Jasinski's hourly overtime rate of pay did not include the $6,884.64 payments she received for Shift Differential.

149.   Upon information and belief, in 2014, Plaintiff Jasinski received approximately $10,047.80 in overtime payments for 247.30 hours worked in excess of 40 hours per week.  The calculation for Jasinski's hourly overtime rate of pay did not include the $7,328.40 payments she received for Shift Differential.

150.   In 2012, Plaintiff Lesser received $7,339.92 for Shift Differential.  In 2013, Plaintiff Lesser received $6,840.96 in Shift Differential.  In 2014, Plaintiff Lesser received $6,944.52 in Shift Differential.

151.   Upon information and belief, in 2012, Plaintiff Lesser received approximately $18,505.75 in overtime payments for 290.50 hours worked in excess of 40 hours per week.  The calculation for Lesser's hourly overtime rate of pay did not include the $7,339.92 payments he received for Shift Differential.

152.   Upon information and belief, in 2013, Plaintiff Lesser received approximately $10,089.41 in overtime payments for 158.50 hours worked in excess of 40 hours per week.  The calculation for Lesser's hourly overtime rate of pay did not include the $6,840.96 payments he received for Shift Differential.

153.   Upon information and belief, in 2014, Plaintiff Lesser received approximately $12,108.16 in overtime payments for 185.00 hours worked in excess of 40 hours per week.  The calculation for Lesser's hourly overtime rate of pay did not include the $6,944.52 payments he received for Shift Differential.

154.   In 2012, Plaintiff Lauro received $7,081.97 for Shift Differential.  In 2013, Plaintiff Lauro received $7,872.48 in Shift Differential.  In 2014, Plaintiff Lauro received $6,912.72 in Shift Differential.

155.   Upon information and belief, in 2012, Plaintiff Lauro received approximately $1,112.83 in overtime payments for 22.50 hours worked in excess of 40 hours per week.  The calculation for Lauro's hourly overtime rate of pay did not include the $7,081.97 payments she received for Shift Differential.

156.   Upon information and belief, in 2013, Plaintiff Lauro received approximately $12,958.25 in overtime payments for 262.00 hours worked in excess of 40 hours per week.  The calculation for Lauro's hourly overtime rate of pay did not include the $7,872.48 payments she received for Shift Differential.

157.   Upon information and belief, in 2014, Plaintiff Lauro received approximately $4,934.79 in overtime payments for 88.50 hours worked in excess of 40 hours per week.  The calculation for Lauro's hourly overtime rate of pay did not include the $6,912.72 payments she received for Shift Differential.

158.   In 2012, Plaintiff Procopio received $6,899.76 for Shift Differential.  In 2013, Plaintiff Procopio received $7,276.08 in Shift Differential.  In 2014, Plaintiff Procopio received $8,120.34 in Shift Differential.

159. Upon information and belief, in 2012, Plaintiff Procopio received approximately $5,956.58 in overtime payments for 135.50 hours worked in excess of 40 hours per week. The calculation for Procopio's hourly overtime rate of pay did not include the $6,899.76 payments he received for Shift Differential.

160. Upon information and belief, in 2013, Plaintiff Procopio received approximately $13,209.98 in overtime payments for 300.50 hours worked in excess of 40 hours per week. The calculation for Procopio's hourly overtime rate of pay did not include the $7,276.08 payments he received for Shift Differential.

161. Upon information and belief, in 2014, Plaintiff Procopio received approximately $23,643.40 in overtime payments for 497.50 hours worked in excess of 40 hours per week. The calculation for Procopio's hourly overtime rate of pay did not include the $8,120.34 payments he received for Shift Differential.

162. In 2012, Plaintiff Santorelli received $6,815.75 for Shift Differential. In 2013, Plaintiff Santorelli received $7,644.84 in Shift Differential. In 2014, Plaintiff Santorelli received $7,360.08 in Shift Differential.

163. Upon information and belief, in 2012, Plaintiff Santorelli received approximately $4,402.15 in overtime payments for 107.50 hours worked in excess of 40 hours per week. The calculation for Santorelli's hourly overtime rate of pay did not include the $6,815.75 payments he received for Shift Differential.

164. Upon information and belief, in 2013, Plaintiff Santorelli received approximately $10,366.71 in overtime payments for 253.00 hours worked in excess of 40 hours per week. The calculation for Santorelli's hourly overtime rate of pay did not include the $7,644.84 payments he received for Shift Differential.

165.    Upon information and belief, in 2014, Plaintiff Santorelli received approximately $5,648.71 in overtime payments for 134.30 hours worked in excess of 40 hours per week.  The calculation for Santorelli's hourly overtime rate of pay did not include the $7,360.08 payments he received for Shift Differential.

166.    In 2012, Plaintiff Sarter received $7,619.01 for Shift Differential.  In 2013, Plaintiff Sarter received $7,644.84 in Shift Differential.  In 2014, Plaintiff Sarter received $7,218.03 in Shift Differential.

167.    Upon information and belief, in 2012, Plaintiff Sarter received approximately $24,658.61 in overtime payments for 454.00 hours worked in excess of 40 hours per week.  The calculation for Sarter's hourly overtime rate of pay did not include the $7,619.01 payments he received for Shift Differential.

168.    Upon information and belief, in 2013, Plaintiff Sarter received approximately $14,688.72 in overtime payments for 270.50 hours worked in excess of 40 hours per week.  The calculation for Sarter's hourly overtime rate of pay did not include the $7,644.42 payments he received for Shift Differential.

169.    Upon information and belief, in 2014, Plaintiff Sarter received approximately $12,145.02 in overtime payments for 218.00 hours worked in excess of 40 hours per week.  The calculation for Sarter's hourly overtime rate of pay did not include the $7,218.03 payments he received for Shift Differential.

170.    In 2012, Plaintiff Sciremammano received $6,945.12 for Shift Differential.  In 2013, Plaintiff Sciremammano received $554.40 in Shift Differential.  In 2014, Plaintiff Sciremammano received $133.32 in Shift Differential.

171.   Upon information and belief, in 2012, Plaintiff Sciremammano received approximately $7,760.12 in overtime payments for 173.00 hours worked in excess of 40 hours per week. The calculation for Sciremammano's hourly overtime rate of pay did not include the $6,945.12 payments he received for Shift Differential.

172.   Upon information and belief, in 2013, Plaintiff Sciremammano received approximately $16,586.92 in overtime payments for 370.00 hours worked in excess of 40 hours per week. The calculation for Sciremammano's hourly overtime rate of pay did not include the $554.12 payments he received for Shift Differential.

173.   Upon information and belief, in 2014, Plaintiff Sciremammano received approximately $19,128.51 in overtime payments for 426.00 hours worked in excess of 40 hours per week. The calculation for Sciremammano's hourly overtime rate of pay did not include the $133.32 payments he received for Shift Differential.

174.   In 2012, Plaintiff Wright received $7,254.24 for Shift Differential.  In 2013, Plaintiff Wright received $7,899.36 in Shift Differential.  In 2014, Plaintiff Wright received $8,599.62 in Shift Differential.

175.   Upon information and belief, in 2012, Plaintiff Wright received approximately $20,776.66 in overtime payments for 344.04 hours worked in excess of 40 hours per week.  The calculation for Wright's hourly overtime rate of pay did not include the $7,254.24 payments he received for Shift Differential.

176.   Upon information and belief, in 2013, Plaintiff Wright received approximately $32,216.14 in overtime payments for 533.50 hours worked in excess of 40 hours per week.  The calculation for Wright's hourly overtime rate of pay did not include the $7,899.36 payments he received for Shift Differential.

177. Upon information and belief, in 2014, Plaintiff Wright received approximately $42,214.78 in overtime payments for 699.05 hours worked in excess of 40 hours per week. The calculation for Wright's hourly overtime rate of pay did not include the $8,599.62 payments he received for Shift Differential.

178. Defendant had prior notice that shift differential pay must be included in the regular rate of pay for the purpose of computing the overtime rate of pay under the FLSA.

179. As a result of Defendant's violations of the FLSA and the applicable regulations of the U.S. Department of Labor, there has become due and owing to Plaintiffs and other employees similarly situated amounts of overtime pay under the FLSA.

## AS AND FOR A THIRD CAUSE OF ACTION

### Hazardous Duty Pay

180. Plaintiffs repeat and re-allege the allegations set forth in Paragraphs 1 through 179 as if each were set forth in full herein.

181. Defendant County has improperly calculated overtime compensation for Plaintiffs and other employees similarly situated by not including Hazardous Duty payments made to Plaintiffs and other employees similarly situated in calculating Plaintiffs' and other similarly situated employees' regular rate of pay, as required by the FLSA.

182. Under the FLSA and the applicable regulations of the U.S. Department of Labor, contractual premium pay rates must be included in calculating the regular rate of pay. See, 29 C.F.R. § 778.207.

183. Pursuant to Section 25-9 of the CBA, since January 1, 2003, CSEA members have received an annual stipend of $500.00, payable on or about July 1st. The CBA also provides that

effective July 1, 2003 and thereafter, the stipend shall be increased by the same percentage as any general base wage increase negotiated.

184.    On July 1, 2012, Plaintiff Aliberti received a lump sum payment for Hazardous Duty Pay in the amount of $621.48.  On July 1, 2013, Plaintiff Aliberti received a lump sum payment for Hazardous Duty Pay in the amount of $621.48.  On July 1, 2014, Plaintiff Aliberti received a lump sum payment for Hazardous Duty Pay in the amount of $648.70.

185.    Upon information and belief, in 2012, Plaintiff Aliberti received approximately $9,606.67 in overtime payments for 234.00 hours worked in excess of 40 hours per week.  The calculation for Aliberti's hourly overtime rate of pay did not include the $621.48 payment he received for Hazardous Duty Pay.

186.    Upon information and belief, in 2013, Plaintiff Aliberti received approximately $10,363.13 in overtime payments for 252.50 hours worked in excess of 40 hours per week.  The calculation for Aliberti's hourly overtime rate of pay did not include the $621.48 payment he received for Hazardous Duty Pay.

187.    Upon information and belief, in 2014, Plaintiff Aliberti received approximately $25,133.00 in overtime payments for 612.00 hours worked in excess of 40 hours per week.  The calculation for Aliberti's hourly overtime rate of pay did not include the $648.70 payment he received for Hazardous Duty Pay.

188.    On July 1, 2012, Plaintiff Gerrato received a lump sum payment for Hazardous Duty Pay in the amount of $621.48.  On July 1, 2013, Plaintiff Gerrato received a lump sum payment for Hazardous Duty Pay in the amount of $621.48.  On July 1, 2014, Plaintiff Gerrato received a lump sum payment for Hazardous Duty Pay in the amount of $548.70.

189.   Upon information and belief, in 2012, Plaintiff Gerrato received approximately $24,149.55 in overtime payments for 459.50 hours worked in excess of 40 hours per week. The calculation for Gerrato's hourly overtime rate of pay did not include the $621.48 payment he received for Hazardous Duty Pay.

190.   Upon information and belief, in 2013, Plaintiff Gerrato received approximately $15,741.82 in overtime payments for 257.00 hours worked in excess of 40 hours per week. The calculation for Gerrato's hourly overtime rate of pay did not include the $621.48 payment he received for Hazardous Duty Pay.

191.   Upon information and belief, in 2014, Plaintiff Gerrato received approximately $33,425.74 in overtime payments for 532.50 hours worked in excess of 40 hours per week. The calculation for Gerrato's hourly overtime rate of pay did not include the $548.70 payment he received for Hazardous Duty Pay.

192.   On July 1, 2012, Plaintiff Jasinski received a lump sum payment for Hazardous Duty Pay in the amount of $621.48. On July 1, 2013, Plaintiff Jasinski received a lump sum payment for Hazardous Duty Pay in the amount of $621.48. On July 1, 2014, Plaintiff Jasinski received a lump sum payment for Hazardous Duty Pay in the amount of $644.68. On July 1, 2015, Plaintiff Jasinski received a lump sum payment for Hazardous Duty Pay in the amount of $644.68.

193.   Upon information and belief, in 2012, Plaintiff Jasinski received approximately $5,352.66 in overtime payments for 181.50 hours worked in excess of 40 hours per week. The calculation for Jasinski's hourly overtime rate of pay did not include the $621.48 payment she received for Hazardous Duty Pay.

194.    Upon information and belief, in 2013, Plaintiff Jasinski received approximately $4,084.53 in overtime payments for 138.50 hours worked in excess of 40 hours per week.  The calculation for Jasinski's hourly overtime rate of pay did not include the $621.48 payment she received for Hazardous Duty Pay.

195.    Upon information and belief, in 2014, Plaintiff Jasinski received approximately $10,047.80 in overtime payments for 247.30 hours worked in excess of 40 hours per week.  The calculation for Jasinski's hourly overtime rate of pay did not include the $644.68 payment she received for Hazardous Duty Pay.

196.    On July 1, 2012, Plaintiff Procopio received a lump sum payment for Hazardous Duty Pay in the amount of $621.48.  On July 1, 2013, Plaintiff Procopio received a lump sum payment for Hazardous Duty Pay in the amount of $621.48.  On July 1, 2014, Plaintiff Procopio received a lump sum payment for Hazardous Duty Pay in the amount of $648.70. On July 1, 2015, Plaintiff Procopio received a lump sum payment for Hazardous Duty Pay in the amount of $648.70.

197.    Upon information and belief, in 2012, Plaintiff Procopio received approximately $5,956.58 in overtime payments for 135.50 hours worked in excess of 40 hours per week.  The calculation for Procopio's hourly overtime rate of pay did not include the $621.48 payment he received for Hazardous Duty Pay.

198.    Upon information and belief, in 2013, Plaintiff Procopio received approximately $13,209.98 in overtime payments for 300.50 hours worked in excess of 40 hours per week.  The calculation for Procopio's hourly overtime rate of pay did not include the $621.48 payment he received for Hazardous Duty Pay.

199.    Upon information and belief, in 2014, Plaintiff Procopio received approximately $23,643.40 in overtime payments for 497.50 hours worked in excess of 40 hours per week. The calculation for Procopio's hourly overtime rate of pay did not include the $648.70 payment he received for Hazardous Duty Pay.

200.    On July 1, 2012, Plaintiff Sciremammano received a lump sum payment for Hazardous Duty Pay in the amount of $621.48. On July 1, 2013, Plaintiff Sciremammano received a lump sum payment for Hazardous Duty Pay in the amount of $621.48. On July 1, 2014, Plaintiff Sciremammano received a lump sum payment for Hazardous Duty Pay in the amount of $648.70.

201.    Upon information and belief, in 2012, Plaintiff Sciremammano received approximately $7,760.12 in overtime payments for 173.00 hours worked in excess of 40 hours per week. The calculation for Sciremammano's hourly overtime rate of pay did not include the $621.48 payment he received for Hazardous Duty Pay.

202.    Upon information and belief, in 2013, Plaintiff Sciremammano received approximately $16,586.92 in overtime payments for 370.00 hours worked in excess of 40 hours per week. The calculation for Sciremammano's hourly overtime rate of pay did not include the $621.48 payment he received for Hazardous Duty Pay.

203.    Upon information and belief, in 2014, Plaintiff Sciremammano received approximately $19,128.51 in overtime payments for 426.00 hours worked in excess of 40 hours per week. The calculation for Sciremammano's hourly overtime rate of pay did not include the $648.70 payment he received for Hazardous Duty Pay.

204.    On July 1, 2012, Plaintiff Wright received a lump sum payment for Hazardous Duty Pay in the amount of $621.48. On July 1, 2013, Plaintiff Wright received a lump sum payment for

Hazardous Duty Pay in the amount of $621.48.  On July 1, 2014, Plaintiff Wright received a lump sum payment for Hazardous Duty Pay in the amount of $648.70.  On July 1, 2015, Plaintiff Wright received a lump sum payment for Hazardous Duty Pay in the amount of $648.70.

205.   Upon information and belief, in 2012, Plaintiff Wright received approximately $20,776.66 in overtime payments for 344.04 hours worked in excess of 40 hours per week.  The calculation for Wright's hourly overtime rate of pay did not include the $621.48 payment he received for Hazardous Duty Pay.

206.   Upon information and belief, in 2013, Plaintiff Wright received approximately $32,216.14 in overtime payments for 533.50 hours worked in excess of 40 hours per week.  The calculation for Wright's hourly overtime rate of pay did not include the $621.48 payment he received for Hazardous Duty Pay.

207.   Upon information and belief, in 2014, Plaintiff Wright received approximately $42,214.78 in overtime payments for 699.05 hours worked in excess of 40 hours per week.  The calculation for Wright's hourly overtime rate of pay did not include the $648.70 payment he received for Hazardous Duty Pay.

208.   Defendant had prior notice that hazardous duty pay must be included in the regular rate of pay for the purpose of computing the overtime rate of pay under the FLSA.

209.   The employment and work records for Plaintiffs and other employees similarly situated are in the exclusive possession, custody and control of Defendant, and Plaintiffs and other employees similarly situated are unable to state at this time the exact amounts owing to each of them.

## AS AND FOR A FOURTH CAUSE OF ACTION

### Contributions to State Employees' Pension Fund

210.   Plaintiff repeats and re-alleges the allegations set forth in Paragraph 1 through 209 as if each were set forth in full herein.

211.   At all relevant times, Defendant contributed to Plaintiffs and other similarly situated employees' pension program through the New York State Employees' Retirement System.

212.   Under N.Y. Retire. & Soc. Sec. Law § 23(b)(1) the amount of an employer's contribution to the New York State Employees' Retirement System is based upon the annual compensation of each employee.

213.   Pursuant to Section 40 of the CBA, Defendant contributes to the Plaintiffs and other similarly situated employees' pension program through the New York State Employees' Retirement System.

214.   Defendant's failure to properly compensate Plaintiff and other employees similarly situated, in violation of the FLSA, as stated above, resulted in Defendant failing to properly contribute to Plaintiffs and other similarly situated employees' pension program through the New York State Employees' Retirement System.

215.   As a result of Defendant's failure to properly contribute to Plaintiffs and other similarly situated employees' pension program through the New York State Employees' Retirement System there has become due and owing to Plaintiffs and other employees similarly situated amounts of contributions to their pension program.

216.   The employment and work records for Plaintiffs and other employees similarly situated are in the exclusive possession, custody and control of Defendant, and Plaintiffs and other

employees similarly situated are unable to state at this time the exact amounts owing to their pension program.

## Demand for Jury Trial

217.    Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs, on their own behalf and on behalf of others similarly situated, demand a trial by jury in this action.

**WHEREFORE,** Plaintiffs, on their own behalf and on behalf of others similarly situated, respectfully request that this Court:

(a)     Enter a declaratory judgment declaring that Defendant has willfully and wrongfully violated its statutory obligations under the FLSA and deprived Plaintiffs of their rights, protections and entitlements under the law, as alleged herein;

(b)     Enter a permanent injunction restraining and preventing Defendant from withholding the compensation that is due each of the Plaintiffs and from further violating their rights under the law;

(c)     Order a complete and accurate accounting of all the compensation to which Plaintiffs are entitled;

(d)     Award Plaintiff Aliberti monetary damages in the form of back pay compensation, and liquidated damages equal to his unpaid compensation in the amount of $1,470.79;

(e)     Award Plaintiff Blanc monetary damages in the form of back pay compensation, and liquidated damages equal to his unpaid compensation in the amount of $16,220.98;

(f)     Award Plaintiff Burkitt monetary damages in the form of back pay compensation, and liquidated damages equal to her unpaid compensation in the amount of $300.33;

(g)     Award Plaintiff Chodkowski monetary damages in the form of back pay compensation, and liquidated damages equal to her unpaid compensation in the amount of $10,911.03;

(h)     Award Plaintiff Ferguson monetary damages in the form of back pay compensation, and liquidated damages equal to her unpaid compensation in the amount of $3,233.68;

(i)     Award Plaintiff Gerrato monetary damages in the form of back pay compensation, and liquidated damages equal to his unpaid compensation in the amount of $10,192.40;

(j)     Award Plaintiff Jasinski monetary damages in the form of back pay compensation, and liquidated damages equal to her unpaid compensation in the amount of $5,352.66;

(k)     Award Plaintiff Lesser monetary damages in the form of back pay compensation, and liquidated damages equal to his unpaid compensation in the amount of $3,813.89;

(l)     Award Plaintiff Lauro monetary damages in the form of back pay compensation, and liquidated damages equal to her unpaid compensation in the amount of $2,248.67;

(m)     Award Plaintiff Procopio monetary damages in the form of back pay compensation, and liquidated damages equal to his unpaid compensation in the amount of $4,948.13;

(n)     Award Plaintiff Santorelli monetary damages in the form of back pay compensation, and liquidated damages equal to his unpaid compensation in the amount of $2,765.27;

(o)     Award Plaintiff Sarter monetary damages in the form of back pay compensation, and liquidated damages equal to his unpaid compensation in the amount of $7,022.52;

(p)     Award Plaintiff Sciremammano monetary damages in the form of back pay compensation, and liquidated damages equal to his unpaid compensation in the amount of $2,544.51;

(q)     Award Plaintiff Wright monetary damages in the form of back pay compensation, and liquidated damages equal to his unpaid compensation in the amount of $13,995.61;

(r)     Award each Plaintiff monetary damages in the form of contributions to their pension

program through the New York State Retirement System, plus interest;

(s)     Award Plaintiffs their reasonable attorneys' fees to be paid by Defendant, and the costs and

disbursements of this action; and

(t)     Grant such other relief as the Court deems just and equitable.

Dated: December 14, 2015
       Albany, New York

                              STEVEN A. CRAIN and DAREN J. RYLEWICZ
                              Attorneys for Plaintiffs

        By:     _____
                              Eric E. Wilke, of counsel
                              Aaron E. Kaplan, of counsel
                              Civil Service Employees Association, Inc.
                              Box 7125, Capitol Station
                              143 Washington Avenue
                              Albany, New York 12224
                              (518) 257-1443

PL/10-1181/EEW/lu/Summons and Complaint#355207